UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| TINA CZERW, | | |
| | Plaintiff, | No. 03-CV-6613 CJS |
| -vs- | | |
| | | DECISION AND ORDER |
| RONALD BILLITIER ELECTRIC, INC., | | |
| | Defendant. | |

_____

| | | |
|---|---|---|
| TINA CZERW, | | |
| | Plaintiff, | No. 03-CV-6614 CJS |
| -vs- | | |
| ROCHESTER LINOLEUM AND CARPET ONE, | | |
| | Defendant. | |

_____

APPEARANCES

| | |
|---|---|
| For plaintiff: | J. Nelson Thomas, Esq.<br>Dolin, Thomas & Solomon, LLP<br>135 Corporate Woods, Suite 130<br>Rochester, New York 14623 |
| For defendant<br>Billitier Electric: | Andrew J. Ryan, Esq.<br>Woods Oviatt Gilman LLP<br>700 Crossroads Building<br>2 State Street<br>Rochester, New York 14614 |
| For defendant<br>Rochester Linoleum<br>and Carpet One: | Karl S. Essler, Esq.<br>David D. Benz, Esq.<br>295 Woodcliff Drive, Suite 200<br>Fairport, New York 14450 |

INTRODUCTION

These two actions arise from the same facts and allege violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the New York Human Rights Law ("NYHRL"), New York Executive Law § 290 *et seq.*  Plaintiff Tina Czerw ("plaintiff") contends that defendant Ronald Billitier Electric, Inc. ("Billitier Electric") terminated her employment after being informed by her former employer, Rochester Linoleum and Carpet One ("Rochester Linoleum"), that she had sued Rochester Linoleum for sexual harassment.  Now before the Court are motions for summary judgment by both Billitier Electric [#9] and Rochester Linoleum [#11].  For the reasons that follow, both applications are denied.

BACKGROUND

Unless otherwise noted, the following are the undisputed facts.  Plaintiff was previously employed by Rochester Linoleum, which is owned and operated by two brothers, Albert Pelusio and David Pelusio.  In or about February 2000, plaintiff voluntarily ceased working at Rochester Linoleum, after claiming that she had been the victim of hostile-work environment sexual harassment.

In or about March 2000, plaintiff was hired by Billitier Electric, which is owned by Ronald Billitier ("Billitier").  Plaintiff alleges that Billitier and the Pelusios are "personal friends," although she does not state the basis for her knowledge in this regard.  Billitier and the Pelusios, meanwhile, contend that they are at most acquaintances who belonged to the same country club.  It is undisputed that at all relevant times herein, Billitier and the Pelusios were members of the same country club.

Plaintiff sued Rochester Linoleum for sexual harassment, pursuant to Title VII

and the New York State Human Rights Law, in this Court on April 23, 2001. Plaintiff continued working for Billitier Electric while her lawsuit against Rochester Linoleum proceeded. In April 2002, Billitier Electric gave plaintiff a "final warning" as a result of unacceptable conduct in the work place. According to Billitier, "[i]n Spring 2002, Ms. Czerw, along with three other members of Billitier's administrative staff, began having difficulty working together and focusing on their work." Billitier Aff. ¶ 8. On April 9, 2002, four of Billitier Electric's company officers, Billitier, Paul DiPasquale, Rick Lincourt, and David Pagano ("Pagano"), met with plaintiff and three other employees of Billitier Electric: Heather Kelly ("Kelly"), Dianne Arazy ("Arazy"), and Trudy Salmon ("Salmon"). At the meeting, plaintiff, Kelly, Arazy, and Salmon were issued final warnings regarding their misconduct, as described in a memo which Billitier prepared after the meeting, which states:

> Based on my continual observations over the past several months, final warnings have been issued to referenced employees for reasons as follows:
>
> - Excessive breaks/loitering in other employees' workspace
> - Excessive personal phone calls
> - Intraoffice non-business related e-mails
> - Web surfing/instant messaging
> - Unacceptable language and/or treatment of fellow employees
>
> Warnings are considered final due to the numerous times these employees have been told about the same issues. Shortly thereafter, a slight improvement would follow, only to regress.

Billitier Aff., Ex. A. According to Billitier, by the end of Summer 2002, plaintiff was again exhibiting problem behavior, namely, she was having a conflict with Kelly, who was her immediate supervisor. *Id*. at ¶ 10. Billitier states that on Friday, August 23, 2002,

plaintiff came to him and gave him an ultimatum regarding Kelly: "She stated that she could no longer work with Heather Kelly and that either [Kelly] needed to be terminated or else [she] would quit." *Id*. at ¶ 12.  According to Billitier, plaintiff further told him that if she saw Kelly "outside of the office," she would "rip [Kelly's] head off." *Id*. at ¶ 13.

Later that same day, plaintiff completed a vacation request form, requesting that she be allowed to take off Monday through Thursday of the following week as vacation. Plaintiff's request was granted.  Plaintiff intended to used this vacation time to attend the trial in her case against Rochester Linoleum, which was scheduled to be held before the undersigned between Monday, August 26, 2002, and Thursday, August 29, 2002.  However, the vacation request form that plaintiff completed did not indicate the reason for the request, nor is there any indication in the current record that she informed anyone at Billitier Electric that she was going to be attending a trial.

Plaintiff's trial against Rochester Linoleum did in fact commence on Monday, August 26, 2002, which was also the first business day following plaintiff's ultimatum to Billitier.  That day, Billitier met with Pagano, Billitier Electric's Chief Financial Officer, to consider plaintiff's conduct on the previous Friday. Billitier and Pagno state that, based upon plaintiff's ultimatum and threat and based upon the fact that she had already been issued a final warning, they agreed to terminate her employment when she returned to work on Friday, August 30th.  Both Billitier and Pagano insist that at the time they decided to terminate plaintiff's employment, they were not aware that plaintiff had previously worked for Rochester Linoleum, or that she had sued Rochester Linoleum.

On Thursday August 29, 2002, proofs were closed plaintiff's in bench trial against Rochester Linoleum.  At that time, the Court indicated that it would issue its

decision on September 4, 2002. As discussed earlier, Billitier and Pagano state that they intended to terminate plaintiff's employment when she returned from vacation on Friday, August 30th. However, plaintiff did not return to work that day, but called in sick instead. Plaintiff did not return to work until Wednesday, September 4, 2002, which, as indicated above, was the same day that the Court planned to issue its verdict in connection with plaintiff's bench trial. That morning, plaintiff called Billitier Electric and informed them that she would be arriving at work late. Apparently this was so that she could attend court in the morning to hear the Court's verdict, although there is no indication that she informed Billitier Electric why she would arriving late. At the court appearance, this Court issued its verdict in favor of Rochester Linoleum, and dismissed plaintiff's action. Later that day, plaintiff returned to work at Billitier Electric, whereupon she was informed that her employment there was terminated.

PROCEDURAL HISTORY

Plaintiff commenced both of the above-captioned actions on December 5, 2003. The undersigned referred both matters to the Honorable Jonathan W. Feldman, United States Magistrate Judge, for all non-dispositive pre-trial matters. Magistrate Judge Feldman scheduled a Rule 16 scheduling conferences for June 16, 2004, however, on June 9, 2004, defendants' counsel requested that the scheduling conferences be cancelled, because defendants wished to file summary judgment motions. Plaintiff did not object to the requests, and Magistrate Judge Feldman cancelled the Scheduling Conferences. In addition to the fact that the Rule 16 conferences did not occur, it is undisputed that counsel never had a conference pursuant to Federal Rule of Civil Procedure ("FRCP") 26(f). As a result, the parties agree that plaintiff has had no

opportunity to conduct discovery in either of the two cases.[1] *See*, FRCP 26(d) ("[A] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).").

Defendants Billitier Electric and Rochester Linoleulm filed the subject motions for summary judgment on November 2, 2004, and November 29, 2004, respectively.  In support of its application, Billitier Electric filed the affidavits of Billitier and Pagano, each of which states, as discussed above,  that plaintiff's employment at Billitier Electric was terminated for reasons unrelated to her lawsuit against Rochester Linoleum, and that, at the time they decided to terminate her, neither was even aware that she had previously been employed by Rochester Linoleum, let alone that she had sued Rochester Linoleum.  Billitier Electric also submitted affidavits from the Pelusios.  Albert Pelusio states that while he and his brother and Billitier are acquaintances,

> [p]laintiff's allegations that Mr. Billitier and I are close personal friends is ridiculous.  In truth, we are nothing more than acquaintances.
>
> Several years ago, Mr. Billitier was a member of Midvale Country Club, a club in which my brother, David Pelusio, and I are also members.  At that time, we knew him as a fellow member but never socialized with him in any way.
>
> On September 4, 2002, after [Czerw's] sexual harassment lawsuit was dismissed by the Court, I happened to run into Mr. Billitier at Midvale Country Club.
>
> At that time, we had a brief conversation wherein my brother mentioned to Mr. Billitier that we were happy to have just received a verdict dismissing a sexual harassment lawsuit brought against Rochester Linoleum by a former employee named Tina Czerw.  Much to our surprise, Mr. Billitier revealed to me that Ms. Czerw, who had been in his employ until that very

---

[1] During oral argument, defendants' counsel agreed that plaintiff has had no opportunity to conduct discovery.

>day, had been terminated due to attendance issues and an ongoing dispute with another employee.
>
>In light of the fact that the only conversation relating to Tina Czerw that ever occurred by anyone associated with either Rochester Linoleum or Billitier Electric happened after Billiter Electric had terminated her, there is clearly no possible way that I or anyone associated with Rochester Linoleum could have aided or abetted Plaintiff's discharge from Billitier Electric.

Albert Pelusio Aff. [#12], ¶ ¶ 8-12. David Pelusio's affidavit adopts the statements in his brother's affidavit. Rochester Linoleum submitted the same affidavits from Billitier, Pagano, and the Pelusios in support of its summary judgment motion.

In response to defendants' motions, plaintiff submitted an affidavit in which she alleges, though without any factual support, that the Pelusios retaliated against her by informing Billitier of her lawsuit against Rochester Linoleulm, and that Billitier Electric retaliated against her by terminating her employment.[2] Regarding her request for vacation, plaintiff states that she requested time off from work "due to a weeklong court appearance." Czerw Aff. [#22] ¶ 4. In this regard, plaintiff's affidavit appears carefully worded to suggest that, at the time she requested the vacation time, she informed Billitier Electric that she would be attending a trial of some type. However, her affidavit does not actually say that she informed Billitier Electric that she would be attending a trial, nor does her vacation request form say anything regarding the trial. Plaintiff's affidavit further alleges, upon information and belief only, that Billitier Electric "found out

---

[2]The Court notes that the Statement of Facts submitted by plaintiff does not comply with Rule 56.1 of the Local Rules of Civil Procedure, which requires, in relevant part, that "[e]ach statement of material fact by a movant or opponent must be followed by a citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)." Local Rule 56.1(d). Federal Rule 56(e) states, in relevant part, that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading." Here, plaintiff's Statement of Facts does not contain citations to evidentiary proof in admissible form in the record, but instead, contains only citations to plaintiff's unsworn complaint.

that the trial [she] was attending concerned the sexual harassment lawsuit [she] had filed against Rochester Linoleum." *Id*. at ¶ 6.  Although plaintiff speculates that Billitier was informed of her lawsuit by the Pelusios prior to September 4, 2002, and that this knowledge caused Billitier to terminate her employment, she submits no evidentiary proof in admissible form in support of her conclusions. Moreover, regarding the termination of her employment, plaintiff does not directly dispute the version of events related by Billitier or Pagano.  That is, she does not dispute that she was given a final warning on April 9, 2002, that she gave an ultimatum to Billitier on August 23, 2002, or that she threatened Kelly, her immediate supervisor.  Instead, plaintiff states:

> Even though defendant Billitier Electric admitted prior to my termination that I was getting along fine with other employees, they fired me claiming that it was now not the case.
>
> When I confronted Mr. Ronald Billitier about the 'real' reason for my termination, and stated that I knew my termination from Billitier Electric was for reasons 'outside' of my employment with Billitier Electric, Ronald Billitier just smirked and did not respond.

Czerw Aff. [#22] ¶ ¶ 7-8.  However, plaintiff does not indicate when she was supposedly told that she was "getting along fine with other employees," in relation to her firing, nor does she explain when or under what circumstances she allegedly confronted Billitier.

In addition to opposing defendant's summary judgment motion, plaintiff has also requested leave to conduct discovery pursuant to Federal Rule 56(f).  In this regard, plaintiff's counsel states that plaintiff "has had no opportunity for discovery in this case as defendant brought this motion for summary judgment before any discovery in the case had taken place."  Thomas Aff. [#21] ¶ 4.  He further states that he wishes to conduct discovery, including: 1) obtaining phone records from Billitier and the Pelusios

"that would shed light on defendant's assertions that these individuals have not had any contact prior to plaintiff's termination"; 2) deposing Billitier's employees having knowledge of the "reasons for plaintiff's termination"; 3) deposing the Pelusios; and 4) deposing "any and all . . . employees of Midvale Country Club, that may have witnessed any interactions of Mr. Albert Pelusio, Mr. David Pelusio, and Mr. Ronald Billitier." Plaintiff's counsel further states that he hopes to depose Arazy, who as discussed above, was one of the four employees who received final warnings from Billitier on April 9, 2002. On this point, counsel states, in relevant part:

> We expect Ms. Arazy will be able to openly refute defendant's reasons of [sic] plaintiff's termination through her own observation of plaintiff (the witness worked right next to Ms. Czerw.
> ***
> We also expect that Ms. Arazy will also be able to refute Billitier Electric's claims that Ms. Czerw gave an ultimatum that she would quit unless another employee was fired. To the contrary, we expect Ms. Arazy to testify that she never heard any such comment, nor did Billitier Electric management relate such a comment to Ms. Arazy in her role in the Human Resource department.

Thomas Aff. [#21] ¶ ¶ 16, 20-21. Notably, plaintiff's counsel indicates that Arazy stopped working at Billitier Electric in October 2002, shortly after plaintiff's employment was terminated.

Counsel for the parties appeared before the undersigned for oral argument on April 14, 2005. At oral argument, plaintiff's counsel indicated that plaintiff disputes Billitier's version of events on August 23, 2002, although she did not include any facts in that regard in her affidavit. Plaintiff's counsel stated that, in his view, it was unnecessary for plaintiff to dispute Billitier's affidavit, as plaintiff essentially had no obligation to come forward with her evidence, since she had not yet had an opportunity

for discovery. Plaintiff's counsel further stated his belief that summary judgment should be denied on the basis of temporal proximity alone. That is, he contended that plaintiff was fired from Billitier Electric only minutes after returning to work from attending her trial, and that this temporal proximity alone is sufficient to establish a triable issue of fact on plaintiff's retaliation claims. Plaintiff's counsel also stated that, although as part of his Rule 56(f) application, he was asking for the opportunity to obtain an affidavit from Arazy, it was "possible" that he already had an affidavit from her, which he had not submitted to the Court. In this regard, counsel again stated his belief that he had no obligation to submit such evidence until he was able to conduct discovery. Plaintiff's counsel further opined that there should be a blanket rule in employment discrimination cases, forbidding grants of summary judgment prior to discovery. Defendants' counsel, on the other hand, objected to plaintiff's counsel's oral proffer of facts not contained in plaintiff's affidavit, and argued that defendants should not be required to submit to a fishing expedition. In this regard, defendants contend that plaintiff's allegation that there was communication concerning her between Billitier and the Pelusios, prior to September 4, 2002, is mere speculation. The Court has thoroughly considered the parties' submissions and the arguments of counsel.

## ANALYSIS

Plaintiff alleges that defendants retaliated against her, in violation of Title VII, and the NYHRL. Both Title VII and NYHRL prohibit an employer from retaliating against an employee for engaging in protected activity. 42 U.S.C. § 2000e-3(a); N.Y. Executive Law § 296(e). To establish a prima facie case of retaliation, "a plaintiff must demonstrate participation in protected activity known to the defendant, an employment

action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citations and internal quotations omitted). Clearly, it would constitute retaliation if an employer terminated an employee for filing a discrimination complaint with the EEOC or for filing a lawsuit.[3] Courts have also held that a former employer may be liable for retaliation if, with retaliatory intent, it notifies prospective employers that a former employee filed a discrimination complaint. *Blanke v. Rochester Tel. Corp.*, 36 F.Supp.2d 589, 600 (W.D.N.Y. 1999) ("[D]isclosure of the fact that plaintiff had filed an EEOC complaint against [plaintiff's former employer] could be considered an adverse action for purposes of his retaliation claim. Certainly a potential employer might think twice about hiring someone after finding out that he had filed charges against his previous employer."); *see also, Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) ("[P]laintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company, if, for example, the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation.") (citations omitted).

The analysis of claims under the NYHRL parallels the analysis of claims under

---

[3]Although the parties do not raise the issue here, the Court notes that it appear that plaintiff's lawsuit against Rochester Linoleum constituted protected activity as against Billitier Electric. *See, e.g., Martin v. Purolater Courier*, No. 94 CV 1004 (FB), 1996 WL 429016 at *8 (E.D.N.Y. Jul. 25, 1996) ("The Court is of the opinion that retaliatory animus is not negated merely because a plaintiff engages in protected activity against a different employer."); *Nielsen v. New York City Com'n on Human Rights*, No. 94 Civ. 6360 (JSR)(JCF),1998 WL 20004 at *8 (S.D.N.Y. Jan. 20, 1998) ("While Mr. Nielsen's purported protected activities are claims against his previous employers Bellevue and IMCR, not against the defendant, this does not affect the viability of his retaliation claim. Title VII prohibits an employer from retaliating against an applicant or employee for exercising his statutory rights, however and wherever those rights were exercised.") (citations omitted).

Title VII. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000) (Citations omitted).  Title VII and NYHRL retaliation claims are analyzed under the three-tier burden-shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).  Under the first tier of the *McDonnell Douglas* test, the plaintiff must establish a prima facie case.[4]  If the plaintiff establishes her prima facie case,

> the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge.  At this stage, the employer need only articulate--but need not prove-- the existence of a nondiscriminatory reason for its decision. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Once defendant meets its burden of production, the burden shifts back to plaintiff. Under the third tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of proving that the reason proffered by the employer is a pretext for unlawful discrimination.  In order to survive a motion for summary judgment, plaintiff must establish a genuine issue of material fact as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also, Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to

---

[4] It is clear that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation marks omitted).

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary

judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

When a party is unable to produce affidavits in opposition to a summary judgment motion, she may make an application pursuant to Rule 56(f), which states:

> **When Affidavits are Unavailable**. Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f). In this Circuit, the requirements for obtaining relief under Rule 56(f) are as follows:

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (citations omitted).

A district court's decision to deny a request for additional discovery under Rule 56(f) is reviewed on appeal using the "abuse of discretion" standard. *Gualandi v. Adams*, 385 F.3d 236, 244-245 (2d Cir. 2004). However, in this regard, it is clear that

as a general rule, summary judgment is strongly disfavored where the non-moving party has had no opportunity to conduct discovery. *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) ("[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.") (*quoting Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *see also*, *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) ("If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment without permitting him to conduct any discovery at all will constitute an abuse of discretion.").

The Second Circuit has indicated that a Rule 56(f) application should ordinarily be granted, and discovery allowed, where the party opposing summary judgment has not had an opportunity for discovery:

> Fed.R.Civ.P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion. Accordingly, we have held that summary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d at 303 (emphasis in original; citations and internal quotation marks omitted). One district court recently noted, in connection with a Rule 56(f) application, that

> [t]here is a critical distinction . . . between cases where a litigant opposing a motion for summary judgment requests a stay of that motion to conduct *additional* discovery and cases where that same litigant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to

*commence* discovery.

*Crystalline H2O, Inc. v. Orminski*, 105 F.Supp.2d 3, 6 -7 (N.D.N.Y. 2000) (emphasis in original).

Applying these principles of law to the facts of this case, the Court concludes that summary judgment should be denied. The Court finds that for purposes of summary judgment, plaintiff has established the three elements of a *prima facie case.* As to the first, plaintiff's lawsuit against Rochester Linoleum undisputedly amounted to participation in protected activity; and, as to the second, her discharge from Billitier Electric clearly constituted an adverse employment action. Regarding the final element, a causal connection between the protected activity and the adverse employment action*,* a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse action, as is the case here[5], is  sufficient to establish causation for purposes of a *prima facie* case. *Treglia v. Town of Manlius,*  313 F.3d 713, 720 (2d Cir. 2002).  While Rochester Linoleum and Billitier Electric have each  come forward with non-discriminatory explanations, a grant of summary judgment before any discovery has been conducted  would be inappropriate, since plaintiff has not had a fair

---

[5]The Court refers to plaintiff's discharge *vis-á-vis* the conclusion of the Rochester Linoleum lawsuit and. the Pelusios' conversation with Billitier concerning plaintiff at Midvale Country Club.

opportunity to show that defendants' articulated reasons are pretextual.[6]

Accordingly, pursuant to Fed. R. Civ.P. 56 (f) defendants' motions for summary judgment are denied at this time, without prejudice, to allow plaintiff to conduct discovery. Defendants may move to renew their applications once plaintiff has had the opportunity to conduct discovery, the scope of which will be determined by Magistrate Judge Feldman.

## CONCLUSION

The summary judgment motion by defendant Billitier Electric, 03-CV-6613 [#9], and the summary judgment by defendant Rochester Linoleum, 03-CV-6614 [#11], are both DENIED, without prejudice.

So Ordered.

Dated: Rochester, New York
      May 16, 2005

ENTER:


 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[6] If plaintiff had already been permitted to conduct discovery, the Court, frankly, would be inclined to deny plaintiff's Rule 56(f) application, and grant summary judgment to defendants. Plaintiff's decision to "hold back" information in opposition to defendants' motion, assuming it was actually intentional, seems inconsistent with the purpose of Rule 56(f). That is, while plaintiff insists that she needs discovery before responding to the summary judgment motion, she has failed to come forward with all of the relevant evidence that is allegedly already in her possession, via affidavits from herself and Arazy. Nor is plaintiff able to do anything more than speculate that discovery will produce evidence to support her claim that the Pelusios informed Billitier of her lawsuit at some time prior to September 4, 2002. See, *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (Holding that a party may not use Rule 56(f) to conduct a "fishing expedition"). However, this is not the usual case, since plaintiff has admittedly had no opportunity to conduct discovery.